JOHN STICKFORD ET AL., Respondents, *v.* CITY OF ST. LOUIS, Appellant.

7a 217
33a 492

7   217
83  250

### May 20, 1879.

1. The various forms or subjects of injury sustained from a single wrongful act do not multiply the causes of action.

2. In an action for damages against a municipal corporation for an injury to property caused by a change of grade of a street, where the plaintiff owns the fee of one lot, and a leasehold with rent of the adjoining lot, he may sue in one count for the damage to both.

3. The charter provision of 1870 that the city shall be liable for damages sustained by property-owners by reason of any change of the grade of a street, applies to a case where the change does not extend to the whole width of the road-bed, if the alteration is such as to raise or lower the principal current of travel and transportation.

4. The recovery is not confined to such damage as results from some physical injury to the buildings; it is enough that a depreciation in value results from the change of grade.

APPEAL from St. Louis Circuit Court.

*Affirmed.*

LEVERETT BELL, for appellant: Where separate and distinct causes of action are blended in one count, the plaintiff should be compelled to elect.— *Otis* v. *Bank*, 35 Mo. 128. And the objection may be taken by motion in arrest.— *Hoagland* v. *Railroad Co.*, 39 Mo. 457. The buildings were not impaired, and only nominal damages can be recovered. — *Smith* v. *Washington*, 20 How. 135 ; *St. Louis* v. *Gurno*, 12 Mo. 414 ; *Imler* v. *Springfield*, 55 Mo. 119.

SENECA N. TAYLOR, for respondents: The city is liable for any damage occasioned by a change of grade. — *Schumacher* v. *St. Louis*, 3 Mo. App. 297.    But one cause of

action was stated.— *Von Fragstein* v. *Windler*, 2 Mo. App. 598.

Lewis, P. J., delivered the opinion of the court.

The plaintiffs are owners of a lot fronting on Fourteenth Street in the city of St. Louis, and also of a leasehold having about sixteen years to run, on a contiguous lot which fronts in like manner. Both lots are improved with permanent buildings which were erected several years before the injurious acts complained of, and in conformity with the existing grade established in 1858. In 1875, the city authorities adopted "An ordinance to approve the plans for bridges over the Union Depot and Pacific Railroad tracks on Twelfth and Fourteenth Streets, and to appropriate money for the construction of such bridges." In pursuance of this ordinance, a roadway about four feet higher than the established grade was constructed so as to occupy the middle of the street. This left nine feet on either side between the retaining walls of the roadway and the curb of the sidewalk. The sidewalks, each fifteen feet wide, were left undisturbed. The suit is for the injuries resulting to the plaintiff's property, chiefly in the depreciation of values and the lowering of rents. The court, sitting as a jury, found for the plaintiffs, and assessed their damages at $900.

The petition contains but one count. The court refused to require the plaintiffs, upon the defendant's motion, to elect, as between the alleged injury done to the fee-simple lot and that which fell upon the leasehold, upon which they would proceed to trial. There was no error in this refusal. There was but one cause of action, to wit, the elevating of the roadway. The various forms or subjects of injury sustained by a party from a single wrongful act cannot multiply the causes of action. *Von Fragstein* v. *Windler*, 2 Mo. App. 598.

The city charter of 1870 changed the existing common-

law rule on the subject, by providing that "the city shall be liable for damages sustained by owners of real estate upon which permanent buildings shall have been erected, by any change of grade of any street upon which said real estate shall front." Rev. Ord. 1871, p. 112, sect. 1. It is contended for the city that in this case there was no such change of grade as the provision just quoted was intended to reach ; that here the change affected only thirty-two feet in a width of fifty feet, with thirty feet added for sidewalks ; whereas the charter provision applies only to a change of grade over the entire width. Such an interpretation would substitute the shadow for the substance. It would allow the city to evade responsibility for every change of grade by leaving a few feet, or even a few inches, untouched along the lateral boundaries of the street. Suppose that, instead of elevating, the change of grade was effected by sinking the level of the street twenty feet or more. The practicable roadway would be confined to a deep ditch. On either side the authorities would leave a narrow strip of the former grade in front of the buildings thus left away above the tide of travel. Would it be pretended that the resulting injury to property-owners would be less entitled to consideration than if the ditch had been dug a little wider? The change of grade contemplated by the charter provision is manifestly any such alteration as will raise or lower the principal current of travel and transportation. A different application would defeat the plain purposes of the law.

It is further contended that the damages to be recovered must be such only as result from some physical injury or impairment of the buildings, consequent upon the change of grade. The limitation is not sustained by the language of the provision, nor by any general rule of law. The city's liability is for "damages sustained by the owners." A depreciation in the value of property, which is directly caused by the act complained of, is as much a damage sustained by the owner as would be the physical destruction of

the building.    In either case there is a loss of value, which the law proposes to compensate.    The case of *Chicago* v. *Rumsey*, 10 Ch. Leg. N. 333, has no application to the question.    There, the city was held not responsible for the effects of the improvement whether physical or otherwise.

All the judges concurring, the judgment is affirmed.